# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KENNETH R. McCALLISTER,

      Petitioner,

v.                                Case No. 3:20-cv-444-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

Petitioner, Kenneth R. McCallister, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254. Doc. 1. He challenges a state court (Duval County, Florida) judgment of conviction for armed trespass and armed robbery of a Dollar General Store on September 10, 2015. Petitioner is serving a twenty-five year term of incarceration for the armed robbery and a concurrent five-year term of incarceration for the armed trespass.  Respondents

filed a Response. <u>See</u> Doc. 9 (Resp.).[1] Petitioner then filed a Reply. <u>See</u> Doc. 14. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u>

---

[1] Filed with the Response are several exhibits. <u>See</u> Doc. 10. The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

<u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to seeking federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court,

either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).

Procedural defaults may be excused at times. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[3] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[3] Murray v. Carrier, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, " '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam)

(citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir.1986)); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

<u>Id.</u>; <u>see also</u> <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"). To satisfy the prejudice prong of

an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356,

9

371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   <u>Analysis</u>

### A. Ground One

Petitioner alleges counsel erred by failing to object to introduction of the Doller General Store's surveillance videotape for lack of foundation and authentication. Doc. 1 at 10. Petitioner claims witness Daryl Simmons was improperly allowed to authenticate the video "without first testifying to enumerated factors to determine its reliability." Doc. 1 at 10. Citing <u>Wagner v. State</u>, 707 So. 2d 827 (Fla. 1st DCA 1998), Petitioner claims that authentication of the video required the trial court to take into account five enumerated factors related to the "reliability of the process that yielded the [video]" and that Mr. Williams did not give testimony to satisfy those factors. Doc. 1 at 11–12. Thus, he contends, because the video "was a crucial, critical, and highly

significant factor in the [S]tate[']s case . . . , [it] had substantial and injurious effect or influence in determining the jury's verdict." Doc. 1 at 12. He claims that, had counsel timely objected, the trial court would have ruled the video inadmissible, the State "would have lost a critical piece of evidence," and there is a reasonable probability that the outcome of the trial would have been different. Doc. 1 at 12.

However, while Petitioner quotes language from the trial court's denial of his amended motion for post-conviction relief filed under Florida Rule of Criminal Procedure 3.850, see Doc. 1 at 10, Petitioner did not raise this specific claim in that motion. See Resp. Ex. 5. Instead, the language Petitioner quotes is from the trial court's denial of ground one of that motion, in which Petitioner alleged that counsel improperly failed to object to the introduction of suppressed testimony. Resp. Ex. 5 at 48–49; Resp. Ex. 6 at 4. In that claim, Petitioner challenged Mr. Simmons' authentication (without objection by trial counsel) of the surveillance video on the basis that Mr. Simmons' testimony was to be suppressed.

Petitioner did not raise the specific argument he now asserts — that Mr. Simmons' testimony was insufficient under Florida law to authenticate the surveillance video and that counsel should have objected on that basis. Consequently, Petitioner defaulted this claim. See Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]he prohibition against raising

nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief.").

Petitioner cites the Supreme Court's holding in <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), in attempt to overcome the default. In that case, the Supreme Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 17.

To demonstrate that a defaulted claim of ineffective assistance of counsel is "substantial," a petitioner "must demonstrate that the claim has some merit." <u>Id.</u> at 14. Conversely, a petitioner's claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." <u>Id.</u> at 16. Ultimately, "[t]he substantiality of the ineffective-assistance-of-trial-counsel claim . . . [is] analyzed under the familiar framework set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984 )." <u>Ayestas v. Davis</u>, 138 S. Ct. 1080, 1096 (2018). Petitioner does not satisfy that standard here.

Although the question before the Court is one of ineffective assistance of counsel, the issue that underlies Ground One — whether or not the surveillance video was properly authenticated — is a question of state law. <u>See</u> <u>Sims v.</u>

Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998).[4] The state courts' decision on that issue binds this Court. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Although the trial court was not presented with the argument now furthered by Petitioner, the trial court ultimately determined that Mr. Simmons could properly authenticate the video. Thus, Petitioner has not shown that counsel erred by failing to object.

Moreover, even if counsel erred (which the Court does not decide), Petitioner has not shown prejudice. He claims Mr. Simmons' testimony and the trial court's decision regarding authentication should have involved consideration of factors including "[e]vidence establishing the time and date of the [video]," "evidence of editing or tampering," evidence of "[t]he operating condition and capability of the equipment producing [the video] as it relates to the accuracy and reliability of the [video]," evidence of "the preparation, testing, operation, and security of the equipment used to produce the [video], including

---

[4] Even if erroneous, in order to obtain habeas relief, a Petitioner must show that the evidentiary ruling "had [a] substantial and injurious effect or influence in determining the jury's verdict." Sims, 155 F.3d ar 1312 (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

the security of the product itself," and "[t]estimony identifying the relevant participants depicted in the [video]." Doc. 1 at 11–12; Doc. 14 at 7. But Petitioner does not argue or demonstrate, for example, that the video had the wrong date or time, that there was evidence of editing or tampering, or that the video equipment operated in a manner that produced an inaccurate, unreliable, or unsecure recording. Accordingly, Petitioner has not shown that the surveillance video would be inadmissible after testimony regarding those factors and has not shown that admission of the video affected the fundamental fairness of the trial.

As Petitioner has not shown deficient performance by counsel or prejudice, he has not demonstrated that his claim is "substantial" under Martinez. Ground One is therefore denied because it remains procedurally defaulted and barred from federal habeas review.

**B. Ground Two**

Petitioner asserts that counsel "failed to discover reverse Williams[5] Rule evidence" because "the [S]tate with[held] exculpatory Brady[6] material in

---

5 Under the Williams rule, evidence of collateral crimes is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." Williams v. State, 110 So. 2d 654, 662 (Fla. 1959). " 'Reverse Williams rule' evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime." McDuffie v. State, 970 So. 2d 312, 324 n.2 (Fla. 2007).

6 Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process

violation of due process of law." Doc. 1 at 13. Specifically, Petitioner claims the State withheld "investigative reports by [the] Jacksonville Sheriff's Office in connection with robberies of other Dollar [G]eneral Store[]s during the time frame in which [P]etitioner was accused of committing his Dollar General Store robbery." Doc. 1 at 13.

Petitioner asserted the reverse <u>Williams</u> rule argument (that "the facts of the ongoing robberies of the Dollar General Stores were similar enough to to facts of [his] case to make it relevant to his defense" and that counsel erred by failing to investigate and discover it) in his amended Rule 3.850 motion, Doc. 1 at 15; Resp. Ex. 5 at 50, and on appeal of the denial of that motion, Resp. Ex. 29 at 17–24. Thus, that claim is exhausted.

In denying the claim, the trial court explained:

> Defendant maintains counsel was ineffective for failing to investigate and discover "Williams Rule evidence." Defendant asserts after he was arrested as the perpetrator of the robbery of Dollar General on September 10, 2015, Jacksonville Sheriff's Office ("JSO") was still sending out bulletins that Dollar General Store robberies were still occurring and that they were the same type of robberies with the same perpetrator description as the one for which Defendant was arrested. Defendant states this evidence was presented at his sentencing hearing, but not at trial and that if counsel had found and presented this information, the jury would have acquitted him.

---

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

Initially, this Court notes this evidence is not "Williams Rule evidence," which would be evidence of his other similar bad acts or crimes. Rather, the way these allegations are made indicate he believes this to be exculpatory evidence. This Court finds this "evidence" was presented at sentencing through a letter from Defendant's sister. (Ex. F.) The robbery suspect did not match the same description as given for Defendant's robbery. While both suspects were black males, the perpetrator of the ongoing robberies wore a fake beard or mask during each of the robberies and used duct tape or electrical tape to disguise his face. (Ex. F.) Defendant, on the other hand, was described as covering his face with a hat and a bright green scarf-type clothing. (Ex. D at 236, 238, 260, 271.) It would have been up to the judge to determine whether he thought the suspect description was similar enough to make this evidence relevant.[7]

Even assuming arguendo that the trial court would have allowed the evidence and counsel presented such testimony, this Court finds no reasonable probability the result of the proceeding would have been different considering the evidence presented against Defendant at trial. Two eyewitnesses from Dollar General identified Defendant as the suspect at a show up that day as well as during the trial and both testified they were sure Defendant was the perpetrator. (Ex. D at 234-35, 247, 255, 259, 276-77, 277-78, 283-84, 284-285.) Additionally, there was surveillance video the jury viewed to use their own judgment of whether

---

[7] To the extent Petitioner claims the trial court used the wrong standard by considering the evidence as <u>Williams</u> rule evidence rather than reverse <u>Williams</u> rule evidence, Doc. 14 at 10–12, the argument is meritless. The trial court did not mention the words "reverse <u>Williams</u> rule." Nonetheless, after first concluding the evidence was not <u>Williams</u> rule evidence, the trial court considered whether evidence of crimes committed by the other suspect could support Petitioner's claim of innocence as to the September 10, 2015 Dollar General Store robbery. Resp. Ex. 6 at 4–5. Thus, the trial court indeed considered Petitioner's reverse <u>Williams</u> rule argument. <u>See</u> <u>supra</u> n.5 (defining reverse <u>Williams</u> rule evidence).

Defendant could have been the perpetrator. (Ex. D at 220-25, 237-41, 266-68.) One of the witnesses to the robbery left the store when it began, waited in his truck, and followed Defendant once he left the store. (Ex. D at 261-63, 271.) That witness testified Defendant got on a silver bike, which he followed until he lost sight of Defendant, at which time police continued the search in that area as the witness had been relaying Defendant's position on a 911 call. (Ex. D at 263-64, 271-75.) Police saw Defendant on his bike, lost sight of him after he spotted police and turned in a different direction, and ultimately located Defendant in a shed within a backyard. (Ex. D at 292-96, 301, 305-12, 319-20, 335-36, 336-37, 354, 380-81, 383-88, 392-93, 394-95.) Defendant had cash in his pocket when apprehended. (Ex. D at 396-97.) The police also found the bike next to the fence in the backyard and a gun wrapped in a towel in the shed, both of which had Defendant's DNA on when tested. (Ex. D at 308, 310-11, 402, 475-76.) Two of the witnesses testified that the gun found looked like it was the same gun used in the robbery. (Ex. D at 218, 229-30, 254.) The homeowner of the property Defendant was found on verified that he had no permission or authority to be on her property or in her shed, and also verified the bike and the gun found did not belong to her or her husband. (Ex. D at 445-49.) Accordingly, this Court denies Ground Two.

Resp. Ex. 6 at 4–6. Florida's First District Court of Appeal ("First DCA") affirmed the denial, per curiam. Resp. Ex. 31 at 3; McCallister v. State, 291 So.3d 1229 (Fla. 1st DCA Feb. 20, 2020) (table).

The state courts' decisions were not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. Although Petitioner claims that "the evidence could have been used to

show another person . . . was the perpetrator of the robbery for which [he] was accused," the record does not support that claim. As the trial court noted, the other armed suspect wore a fake beard or mask and used duct tape or electrical tape to disguise his face. Resp. Ex. 6 at 155. Those identifying details do not match the description of the suspect in the armed robbery for which Petitioner was charged, who was described as wearing a winter hat that he pulled down over his face, a bright green shirt, and a florouescent green scarf or other item of clothing around his neck. Resp. Ex. 6 at 58, 60, 70, 78.

As explained with regard to Ground One, the admissibility of evidence is a matter of state law. The trial court determined that the identified reverse Williams rule evidence did not match the facts of Petitioner's case, which was not an unreasonable determination of the facts, and implied the evidence would not be admissible. Thus, counsel did not err by failing to investigate or obtain that evidence.

Further, the trial court's summary of the evidence admitted at trial is supported by the record. Given the evidence admitted against Petitioner, there is no reasonable probability that the reverse Williams rule evidence would have affected the outcome of the trial. Therefore, Petitioner cannot demonstrate the requisite prejudice under Strickland, and his reverse Williams rule claim is denied.

As for his <u>Brady</u> claim, Petitioner concedes that he did not raise it as part of his ineffective assistance of counsel claim in his amended Rule 3.850 motion. Doc. 1 at 15. Instead, he contends that the claim was sufficiently presented to the state court when he appealed the denial of that motion and that the First DCA's decision is presumed to be a decision on the merits. Doc. 14 at 12.

Generally, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). But here, such "state-law procedural principles" are present. Under longstanding Florida law, "an appellate court will not consider an issue unless it was presented to the lower court." <u>Steinhorst v. State</u>, 412 So. 2d 332, 338 (Fla. 1982).

Although the First DCA issued a decision without a written explanation, this Court "may not assume that had the [First DCA] issued an opinion, it would have ignored its own procedural rules and reached the merits of this case." <u>Tower v. Phillips</u>, 7 F.3d 206, 211 (11th Cir. 1993). Thus, this Court concludes that the First DCA rejected Petitioner's <u>Brady</u> claim because he failed to raise it in the lower court.

This rejection rests on an independent and adequate state procedural ground and renders the claim defaulted. See <u>Coleman v. Thompson</u>, 501 U.S.

722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) ("[A] state court's rejection of a federal constitutional claim on procedural grounds will . . . preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground."); Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) ("[W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, . . . the federal court [must] respect the state court's decision.").

Nonetheless, Petitioner may overcome the default by demonstrating cause and prejudice or the fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. As with Ground One, Petitioner contends that Martinez applies to supply the requisite cause and prejudice. Doc. 1 at 15.

In order to establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Petitioner must "prove . . . (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant." *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1054 (11th Cir. 2017) (citing *Turner v.*

*United States*, 137 S.Ct. 1885, 1893 (2017); *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

As noted above, the evidence was not exculpatory because the description of the other robbery suspect did not match the description of the robber in the case for which Petitioner was prosecuted.

Petitioner also argues that the undisclosed information about the other robbery suspect "could have been used to directly impeach the identification testimony of Tammy Fine, Daryl Simmons, and Scott Martin based on the fact that[,] at the show up identification[,] [P]etitioner[']s physical appearance was completely different from the previous descriptions given by these witnesses at the time of the robbery." However, Petitioner does not explain how information about a different suspect is relevant to the witnesses' allegedly changing descriptions about the perpetrator of the robbery for which Petitioner was prosecuted. Even if it were relevant, as explained above, Petitioner cannot demonstrate prejudice given the other evidence admitted against him at trial.

Consequently, Petitioner has not established that his <u>Brady</u> claim is substantial under <u>Martinez</u>, and that claim remains procedurally defaulted and barred from federal habeas review. Accordingly, Ground Two is denied.

## C. Ground Three

Petitioner argues his appellate counsel filed only an <u>Anders</u>[8] brief and "failed to challenge . . . the trial court's ruling on his motion to suppress identification testimony based on the fact that the witnesses['] testimony was premised upon an inherently suggestive police procedure that the police aggravated at the confrontation of the show up, rendering the identification testimony unreliable" and depriving him of a fair trial. Doc. 1 at 18. Petitioner argues that showup identifications are inherently suggestive and that the only witness to see the suspect's face before the supect covered it with a ski mask, sunglasses, a hat, and a scarf was Tammy Fine. Thus, "it was completely impossible for the[] [other] three witnesses to make a full facial ID of

---

[8] In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court set forth the following procedure for court-appointed counsel to pursue an appeal requested by his client when counsel has determined there is no merit to the appeal:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

[P]etitioner prior to the show up." Doc. 1 at 20. Moreover, while the witnesses identified him as "wearing various colored articles of clothing at the time of the robbery, . . . at the time of the show up identification,  [P]etitioner was shirtless and only wearing a pair of grey shorts." Doc. 1 at 20.

> because the witnesses could not . . . identify him . . .
> based on faces alone if they had to, nor could these
> witnesses identify [him] from the clothing he was
> wearing at the show up, it only stands to reason by
> logical        extension[]      that      these      witness[es']
> identification of [him] was based . . . on an inherently
> suggestive procedure employed by the police that was
> so suggestive, that in fact, gave rise to the substantial
> likelihood o[f] irreparable misidentification.

Doc. 1 at 20. Petitioner cites several circumstances he believes demonstrate that the showup identification was unduly suggestive, including: (1) that Mr. Simmons "heard a customer state that 'the police had got the guy;' " (2) that Ms. Andrews knew Mr. Martin identified Petitioner as the suspect, and at the showup she observed Petitioner in handcuffs and surrounded by deputies; (3) Ms. Fine heard over the police radio that the robber had been caught and "she knew that the suspect in custody was the same person that robbed the store based on police dispatch communications;" and (4) Mr. Martin testified that the suspect looked different at the showup location than when he was inside the Dollar General Store. Doc. 1 at 22.

Petitioner concedes that he did not exhaust this claim. Doc. 1 at 19. Nonetheless, citing Coleman v. Thompson, 501 U.S. 722 (1991), Petitioner claims he can show cause and prejudice for the default. Doc. 1 at 19. He argues only the merits of his claim, however, and fails to explain any external factor that prevented him from raising this claim of ineffective assistance of appellate counsel in the state courts.

Instead, in his Reply, Petitioner urges that Martinez should apply to supply cause and prejudice. Doc. 14 at 16–18. His argument warrants no relief. The Eleventh Circuit has explained that, "[b]y its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of *trial* counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel." Gore v. Crews, 720 F. 3d 811, 816 (11th Cir. 2013) (emphasis added). Martinez, therefore, does not apply to claims of ineffective assistance of *appellate* counsel that are procedurally barred due to the lack of or ineffective assistance of post-conviction counsel, and does not provide cause for the default of this claim.

Consequently, Ground Three is procedurally barred from federal habeas review and is denied.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

C:     Kenneth R. McCallister, #J57705
       Counsel of record

---

[9] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.